**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

| | | |
|---|---|---|
| **KATHY F. TOLER,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 5:15-01794** |
| | ) | |
| **CAROLYN. W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| **Defendant.** | ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB), under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. By Orders entered February 17, 2015, and January 5, 2016 (Document Nos. 4 and 14.), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' cross-Motions for Judgment on the Pleadings. (Document Nos. 11 and 12.)

The Plaintiff, Kathy F. Toler (hereinafter referred to as "Claimant"), filed applications for DIB and SSI on August 1, 2011, and August 16, 2011, (protective filing date) respectively, alleging disability as of May 5, 2010, due to lupus, fibromyalgia, arthritis, Sjogren's syndrome, chronic back and leg pain, and thyroid problems. (Tr. at 10, 165-66, 167-73, 185, 189, 199.) The claims were denied initially and upon reconsideration. (Tr. at 74-79, 80-82, 85-87, 92-94, 99-101, 106-08, 110-12, 117-19.) On June 25, 2012, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 120-21.) A hearing was held on September 5, 2013, before the Honorable I. K. Harrington. (Tr. at 26-73.)   By decision dated October 11, 2013, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 10-21.) The ALJ's decision became the final decision of the Commissioner on December 17, 2014, when the Appeals Council denied Claimant's request for

review. (Tr. at 1-5.) Claimant filed the present action seeking judicial review of the administrative decision on February 13, 2015, pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2013). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2013). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings,

has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(C) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
>
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
>
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
>
> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[1] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory

---

[1] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since the alleged onset date, May 5, 2010. (Tr. at 12, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from "systemic lupus erythematous (SLE), fibromyalgia, osteopenia, major depressive disorder, and generalized anxiety disorder," which were severe impairments. (Tr. at 12, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 13, Finding No. 4.) The ALJ then found that Claimant had the residual functional capacity for medium work, as follows:

> [T]he [C]laimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except she can frequently balance, stoop, kneel, crouch, and climb ramps and stairs, but can only occasionally crawl and climb ladders, ropes, or scaffolds. She must avoid concentrated exposure to extreme cold, wetness, humidity, fumes, odors, dusts, gases, poor ventilation, and hazards, such as unprotected heights and moving machinery. She is limited to simple routine tasks involving no more than simple, short instructions and simple work-related decisions with few work place changes and no work at a fixed production rate pace.

(Tr. at 16, Finding No. 5.) At step four, the ALJ found that Claimant could not return to her past relevant work. (Tr. at 20, Finding No. 6.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ also concluded that Claimant could perform jobs such as a stock clerk, sorter, and hand packer, at the unskilled, medium level of exertion. (Tr. at 20-21, Finding No. 10.) On these bases, benefits were denied. (Tr. at 21, Finding No. 11.)

<u>Scope of Review</u>

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In <u>Blalock v. Richardson</u>, the Fourth Circuit Court of

Appeals defined substantial evidence as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on May 8, 1956, and was 57 years old at the time of the administrative hearing on September 5, 2013. (Tr. at 20, 165, 167.) The ALJ found that Claimant had at least a high school education and was able to communicate in English. (Tr. at 20, 188, 190, 198, 200.) In the past, she worked as a hair stylist and sales cashier. (Tr. at 20, 67, 190, 200, 218-21.)

 The Medical Record

The Court has considered all evidence of record, including the medical evidence and will summarize it and discuss it below in relation to Claimant's arguments.

John Todd, Ph.D.:

On September 11, 2010, Dr. Todd, a reviewing state agency medical consultant, completed a form Psychiatric Review Technique, on which he opined that the evidence was insufficient and he was unable to complete the form.

Dr. James K. Egnor, M.D.:

On September 13, 2010, Dr. Egnor, a state agency reviewing medical consultant, completed a form Physical RFC Assessment, on which it was noted that Claimant had failed to cooperate in returning pertinent medical assessment forms and that the evidence was insufficient. (Tr. at 271-79.)

Coal Country Clinic:

Claimant treated at Coal Country Clinic from August 29, 2006, through October 19, 2010. (Tr. at 280-373.) From August 29, 2006, through December 11, 2008, Dr. Michael Kostenko, D.O., noted Claimant's complaints of pain and stiffness in her lower back, which radiated at times, to her hip and into the base of her neck and shoulders. (Tr. at 280-83, 297-43, 352-62.) Her pain was increased with forward bending, sitting, driving, and walking. (Tr. at 281-83, 311, 320-321, 330, 334, 341-43.) She presented with lumbar tenderness and guarding, for which she was prescribed medications and an occasional injection. (Id.) Claimant reported improved nervousness and anxiety, increased sleep disturbance by pain, and improved appetite. (Tr. at 353) Beginning primarily in 2007, Dr. Kostenko consistently assessed decreased pain and improved tolerance for activities of daily living. (Tr. at 316, 318, 322, 327, 329, 331, 333-43, 353-62.)

From January 14, 2009, through December 8, 2009, Claimant rated her pain without medical management at a level eight out of ten on average and at a level two with management. (Tr. at 290-96, 347, 349-51.) She continued to report back and leg pain and improving nervousness and anxiety. (Id.) Dr. Kostenko noted that there were no changes in her condition throughout this time period. (Tr. at 347, 349-51.)

From January 9, 2010, through October 19, 2010, Claimant continued to complain of back and leg pain, as well as problems from increased stomach acid and anxiety. (Tr. at 284-89, 344-46, 348, 363-73.) Treatment remained conservative with medications. (Id.) Claimant was discharged from Dr. Kostenko's care on October 19, 2010, for failure to comply with the Narcotics Contract.

(Tr. at 373.)

Mariamma Abraham, M.D.:

A bone density test conducted on November 3, 2010, indicated that Claimant was osteopenic.
(Tr. at 379.)

Princeton Endocrinology, PLLC:

Claimant treated at Princeton Endocrinology, PLLC, from May 23, 2009, through February
5, 2013, for yearly examinations regarding her hypothyroid condition and goiter. (Tr. at 381-420,
478-90.) She was treated conservatively with medications. (Tr. at 410.) The record is void of any
significant findings on physical examination and indicated only minimal complaints of hair loss,
decreased energy, and weight gain on July 25, 2011. (Tr. at 386.) There was no indication that
treatment was altered as a result of the complaints. Claimant's examinations in 2012 and 2013,
remained unchanged. (Tr. at 478-90.)

Thomas H. Howard, M.D.:

The record contains notes from Claimant's treatment with Dr. Howard from July 22, 2009,
through December 20, 2011, for Sjorgen's Syndrome and fibromyalgia. (Tr. at 424-30.) On July 22,
2009, Claimant reported that she was doing well overall, but experienced worsening dry mouth and
dry eye symptoms resulting from Sjogren's syndrome. (Tr. at 424.) Claimant reported continued
symptoms of depression and fibromyalgia but advised that her medications helped. (Id.) She
requested a higher dose of Cymbalta. (Id.) Physical examination revealed tender points of
fibromyalgia and good range of motion. (Id.) Dr. Howard continued her on Plaquenil for Sjogren's
syndrome, increased her Cymbalta, and started her on Restasis drops for dry eyes. (Id.) She also was
continued on Zanaflex. (Id.)

Claimant returned to Dr. Howard a year later, on August 11, 2010, with complaints of right
hand pain and purple feet when cold. (Tr. at 426.) Claimant had decreased her dosage of Cymbalta as

8

the increased dose was not helpful and she was unable to afford the Restasis drops in the absence of medical insurance. (Id.) Physical exam revealed back tenderness and mild generalized tenderness of her joints, consistent with the diagnosis of fibromyalgia. (Id.) Dr. Howard assessed Sjogren's syndrome, endogenous depression, fibrositis, restless leg syndrome, and lumbosacral radiculitis. (Id.) She was continued on her medications. (Id.)

On December 20, 2011, Claimant reported that she had run out of her medications two months prior and that overall, her pain level had worsened. (Tr. at 428.) Examination revealed tender points of fibromyalgia and mouth and eye dryness. (Id.) Dr. Howard refilled her medications. (Id.)

Kelly Robinson, M.A.:

Ms. Robinson, a licensed psychologist, conducted a psychological evaluation of Claimant on January 24, 2012. (Tr. at 431-37.) Ms. Robinson observed that Claimant's grooming and hygiene were fair and that she walked with a slow gait and normal posture. (Tr. at 431.) Claimant reported symptoms of depression and anxiety, including difficulty concentrating, irritability, sleep difficulty, excessive worry, muscle tension, shakiness, feelings of nervousness, frequent stomach aches, and restlessness. (Id.) She indicated a 20 year history of similar problems, for which she had been taking Cymbalta. (Id.) Claimant further reported withdrawal from people, a diminished interest in activities, feelings of sadness and worthlessness, feelings of hopelessness, crying spells, difficulty concentrating, and fatigue. (Tr. at 432.) She indicated a depressed mood for seven days per week. (Id.)

Claimant advised that when in school, she was placed in regular education classes, received average grades, got along fairly well with others, and had no disciplinary problems. (Tr. at 432.) On mental status examination, Ms. Robinson observed a depressed and anxious mood, mildly restricted affect, logical and coherent thought processes, fair insight, normal judgment and memory, moderately deficient concentration, and psychomotor agitation. (Tr. at 433-34.) Claimant was alert

throughout the evaluation and was oriented to person, place, and time, but not date. (Tr. at 433.) Ms. Robinson diagnosed generalized anxiety disorder and major depressive disorder, recurrent, moderate. (Tr. at 434.) Claimant reported her activities to have included feeding the cat, watching little television, "things" around the house as she was able, and reading her mail. (Id.) On a monthly basis, she went to the pharmacy with her brother but avoided people. (Id.) Ms. Robinson opined that Claimant's social functioning was mildly deficient, her concentration was moderately deficient, and her persistence and pace were within normal limits. (Tr. at 435.)

Mustafa Rahim, M.D.:

On January 27, 2012, Claimant presented to Dr. Rahim with complaints of fibromyalgia, Sjogren's syndrome, dry eyes, problems with circulation, anxiety, and chronic low back pain without radicular symptoms. (Tr. at 438.) Dr. Rahim observed that Claimant ambulated without any assistive devices. (Id.) On physical examination, Claimant exhibited normal range of motion of all extremities and there was no evidence of any swelling. (Tr. at 439-40.) She was able to make a fist and oppose her fingers. (Tr. at 439.) Examination of Claimant's cervical, dorsal, and lumbosacral spine revealed an absence of any tenderness or pain, full range of motion, and negative Spurling's sign of the cervical spine. (Tr. at 439-40.) She was able to squat and stand on her heels and toes. (Tr. at 440.) Dr. Rahim noted that Claimant's effort was good during range of motion testing. (Id.) The x-rays of Claimant's lumbar spine revealed only minimal degenerative changes at L3-L5, with a slight narrowing of disc spaces. (Tr. at 443.)

Dr. Rahim assessed chronic back pain in need of further evaluation, lupus, Sjorgen's syndrome, fibromyalgia, circulation problem, gastroesophageal reflux disease, osteoporosis, thyroid problem, dry eyes, anxiety, and leg pain. (Tr. at 440.) Dr. Rahim questioned the legitimacy of Claimant's diagnoses of lupus and Sjogren's syndrome because the lupus diagnosis was based upon a rash and the Sjogren's syndrome diagnosis was based upon her having dry eyes. (Id.) He

questioned whether other tests were conducted to support the diagnoses. (Id.) Dr. Rahim noted that Claimant was taking Plaquenil for lupus, Evista for hypothyroidism, and Nexium for reflux symptoms. (Id.) Despite her taking these medications, Dr. Rahim observed that there had been no diagnostic testing to support the diagnoses. (Id.) In view of Claimant's symptoms of low back pain without radicular symptoms, Dr. Rahim recommended an MRI of her lumbosacral spine. (Id.)

Joseph Shaver, Ph.D.:

On January 31, 2012, Dr. Shaver completed a form Psychiatric Review Technique, on which he opined that Claimant's major depressive disorder and generalized anxiety disorder resulted in mild limitations in maintaining activities of daily living; moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation of extended duration. (Tr. at 446-60.) Dr. Shaver also completed a form Mental RFC Assessment, on which he opined that Claimant was moderately limited in her ability to maintain attention and concentration for extended periods and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number of length of rest periods. (Tr. at 461-62.) Dr. Shaver noted that Claimant's complaints of memory problems and social functioning were inconsistent with the results of Ms. Robinson's mental status evaluation. (Tr. at 463.) He opined that Claimant "retains the mental capacity to operate in work-like situations that do not require high levels of concentration of strict production quotas." (Id.) Dr. James W. Bartee, Ph.D., a state agency reviewing medical consultant, reviewed the evidence of record and affirmed Dr. Shaver's opinion as written. (Tr. at 476.)

Narendra Parikshak, M.D.:

On January 31, 2012, Dr. Parikshak, a state agency reviewing medical consultant, completed a form Physical RFC Assessment, on which he opined that Claimant's fibromyalgia, back pain, and Sjogren's syndrome, limited her to performing medium exertional level work, with occasional

postural limitations for crawling and climbing ladders, ropes, or scaffolds. (Tr. at 465-73.) Dr. Parikshak further opined that Claimant should avoid concentrated exposure to extreme cold, wetness, humidity, vibrations, hazards, and fumes, odors, dusts, or gases. (Tr. at 469.) Dr. A. Rafael Gomez, M.D., another state agency reviewing medical consultant, reviewed all the evidence of record and affirmed Dr. Parikshak's opinion as written. (Tr. at 474.)

David C. Shamblin, M.D.:

Dr. Shamblin first examined Claimant on July 8, 2013, for complaints of back and leg pain. (Tr. at 492.) Dr. Shamblin noted Claimant's history of right low back pain several years prior, which was treated conservatively with muscle relaxants and an injection. (Id.) Claimant's condition worsened in March 2013. (Id.) Physical exam revealed that Claimant walked with a mild, right limp and stood with little weight on the right leg. (Id.) Claimant was able to heel and toe rise and partially squat. (Id.) She presented with tenderness of the lumbosacral spine, from L2 to the sacroiliac joints and right sciatic notch. (Id.) Claimant also exhibited tenderness at the base of the neck. (Id.) Straight leg raising produced back pain, but motor strength and sensation were intact. (Id.) Dr. Shamblin opined that she had symptoms of lupus, Sjogren's syndrome, and fibromyalgia. (Id.) He resumed her Plaquenil and Zanaflex and started her on Lortab for pain, with the use of a hot oil pack on the low back. (Id.)

Claimant returned to Dr. Shamblin on August 8, 2013, at which time she presented with tenderness over the sacroiliac joints and lower paravertebral muscles. (Tr. at 491.) She had a normal gait and stance. (Id.) Dr. Shamblin continued her on Lortab for pain. (Id.)

Claimant's Challenges to the Commissioner's Decision

Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in assessing her pain and credibility resulting from her severe impairments. (Document No. 11 at 7-10.) Claimant specifically asserts that in analyzing her credibility, the ALJ

12

failed to follow the dictates of SSR 96-7p and 20 C.F.R. §§ 404.1529, 416.929, which required the ALJ to consider certain factors in assessing her symptoms, in addition to the objective medical evidence. (Id. at 7-8.) The ALJ however, focused almost exclusively on what she considered a lack of objective findings in discounting Claimant's credibility. (Id. at 8-9.) Although the ALJ acknowledged Claimant's activities of daily living, Claimant asserts that the ALJ improperly determined that such activities were not verified by any objective evidence, thereby undermining the analysis required by SSR 96-7p. (Id. at 9.) Accordingly, Claimant contends that the ALJ committed reversible error in failing to analyze her credibility regarding non-exertional symptomatology. (Id. at 10.)

In response, the Commissioner asserts that Claimant's subjective complaints were not substantiated by objective medical evidence, and therefore, that the ALJ's credibility assessment is supported by the substantial evidence of record. (Document No. 12 at 8-13.) The Commissioner asserts that in assessing symptoms of pain resulting from fibromyalgia, pursuant to SSR 12-2p, the ALJ must continue to consider the existence of objective evidence as he would with any other alleged impairment and may reject Claimant's subjective testimony upon a sufficient explanation. (Id. at 9-10.) The ALJ properly considered the objective evidence and found an absence of widespread pain, repeated manifestations of fibromyalgia symptoms, or resulting functional limitations. (Id. at 10.) The ALJ then found that Claimant's pain was treated with medication and objective tests revealed only mild abnormalities. (Id. at 11) The ALJ also noted the lack of other treatment modalities. (Id.) Furthermore, examination findings were unremarkable. (Id.) Finally, the ALJ found that Claimant's allegations were inconsistent with her reported activities. (Id. at 12-13.) Accordingly, the Commissioner contends that substantial evidence supports the ALJ's credibility determination. (Id. at 13.)

Claimant also alleges that the Commissioner's decision is not supported by substantial

13

evidence because the ALJ failed to perform a "function-by-function" assessment in determining Claimant's RFC. (Document No. 11 at 10-12.) Particularly, she alleges that the ALJ erred in giving substantial weight to the opinions of Dr. Parikshak and Dr. Gomez, and basing her RFC on Dr. Rahim's normal neurological and musculoskeletal findings. (<u>Id.</u> at11.) Claimant notes that SSR 12-2p recognizes that symptoms of fibromyalgia may vary in severity and may be absent on some days. (<u>Id.</u>) To the extent that the ALJ based her RFC assessment on Dr. Rahim's one-time evaluation, Claimant asserts that such reliance was in error. (<u>Id.</u>) She notes that Dr. Rahim's report failed to identify any medical records that he considered. (<u>Id.</u>) Furthermore, Claimant asserts that because Dr. Parikshak based his opinion solidly on Dr. Rahim's report, the ALJ's reliance on Dr. Parikshak and Dr. Gomez is misplaced. (<u>Id.</u>) Claimant also notes that pursuant to 20 C.F.R. § 404.1563(e), advanced age significantly affects a person's ability to adjust to work. (<u>Id.</u> at 12.) Claimant reached "advanced age" two years prior to the ALJ's decision, and therefore, Claimant asserts that the ALJ's decision to assess a medium RFC when she never had performed medium exertional level work, "raises suspicion of an arbitrary and capricious decision." (<u>Id.</u> at 12.) Accordingly, Claimant requests that the ALJ's decision be overturned and benefits awarded, or in the alternative, that the matter be remanded. (<u>Id.</u>)

In response, the Commissioner asserts that the ALJ properly explained the rationale for her RFC assessment, and therefore, such assessment is supported by substantial evidence. (Document No. 12 at 14-18.) The Commissioner asserts that the ALJ carefully explained her rationale for the weight afforded to the medical opinions, and because the ALJ retains the exclusive responsibility for determining RFC, her decision is supported by substantial evidence. (<u>Id.</u> at 15.) The opinions of Drs. Parikshak and Gomez were consistent with the substantial evidence of record. (<u>Id.</u> at 18.) Despite Claimant's allegation that the ALJ failed to conduct a detailed, "function-by-function" assessment of her RFC, the Commissioner asserts that the ALJ considered all of the evidence, as required by the

14

Fourth Circuit, in determining her RFC. (Id. at 15.) The Commissioner asserts that the ALJ properly considered Claimant's examination findings, test results, and therapy records, which satisfied SSR 96-8p. (Id. at 16.) No credible evidence demonstrates functional limitations that precluded work. (Id. at 16-17.) The Commissioner asserts that Dr. Rahim found full range of motion and lack of an assistive device, Drs. Parikshak and Gomez assessed medium level work, Dr. Shamblin noted intact motor strength and sensation, diagnostic testing and laboratory findings were normal, Claimant's symptoms were controlled with medications and conservative treatment, and Claimant engaged in a plethora of physical daily activities. (Id. at 17.) Accordingly, the Commissioner contends that Claimant's assertion that the ALJ failed to conduct a "function-by-function" assessment is without merit. (Id.) Accordingly, the Commissioner contends that the ALJ's RFC assessment is supported by substantial evidence of record.

Analysis.

1. Pain and Credibility Analysis.

Plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ erred in assessing her pain and credibility. (Document No. 11 at 7-10.) A two-step process is used to evaluate a claimant's statements and to determine whether a claimant is disabled by pain or other symptoms. First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the pain or symptoms alleged.  20 C.F.R. §§ 404.1529(b) and 416.929(b) (2013); SSR 96-7p; See also, Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996).  If such an impairment is established, then the intensity and persistence of the pain or symptoms and the extent to which they affect a claimant's ability to work must be evaluated.  Craig, 76 F.3d at 595.  When a claimant proves the existence of a medical condition that could cause the alleged pain or symptoms, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994).

15

Objective medical evidence of pain should be gathered and considered, but the absence of such evidence is not determinative. Hyatt v. Sullivan, 899 F.2d 329, 337 (4th Cir. 1990). A claimant's symptoms, including pain, are considered to diminish her capacity to work to the extent that alleged functional limitations reasonably are consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4) (2013). Additionally, the Regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons. . . . Factors relevant to your symptoms, such as pain, which we will consider include:
>
> (i) Your daily activities;
>
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
>
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and
>
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) (2013).

SSR 96-7p repeats the two-step regulatory provisions:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. * * * If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms,

16

the symptoms cannot be found to affect the individual's ability to do basic work activities.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p, 1996 WL 374186 (July 2, 1996). SSR 96-7p specifically requires consideration of the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" in assessing the credibility of an individual's statements. Significantly, SSR 96-7p requires the adjudicator to engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of the symptoms on a claimant's ability to function along with the objective medical and other evidence in determining whether the claimant's impairment is "severe" within the meaning of the Regulations. A "severe" impairment is one which significantly limits the physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) and 416.920(c).

Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself. Craig, 76 F.3d at 585, 594; SSR 96-7p ("the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record"). For example, the allegations of a person who has a condition capable of causing pain may not be rejected simply because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or] redness" to corroborate the extent of the pain. Id. at 595. Nevertheless, Craig does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in her decision. The only analysis which Craig prohibits is one in which the ALJ

rejects allegations of pain <u>solely</u> because the pain itself is not supported by objective medical evidence.

In <u>Hines v. Barnhart</u>, the Fourth Circuit stated that

> Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers.

453 F.3d 559, 565 n.3 (*citing* <u>Craig</u>, 76 F.3d at 595).

The ALJ noted the requirements of the applicable law and Regulations with regard to assessing pain, symptoms, and credibility. (Tr. at 16.) The ALJ found at the first step of the analysis that Claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. at 16.) Thus, the ALJ made an adequate threshold finding and proceeded to consider the intensity and persistence of Claimant's alleged symptoms and the extent to which they affected Claimant's ability to work. (Tr. at 16-19.) At the second step of the analysis, the ALJ concluded that Claimant's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. at 16.)

In discrediting Claimant's credibility, the ALJ first found that the clinical findings failed to corroborate Claimant's allegations to the extent asserted and that the objective findings were minimal. (Tr. at 16.) A bone density scan suggested osteopenia and lumbar spine x-rays revealed only minimal degenerative changes. (Tr. at 16, 379, 443-44.) The ALJ next found that Claimant's treatment was routine and conservative in nature, with infrequent trips for medical care. (Tr. at 17.) Claimant received only annual examinations by Dr. Howard for her Sjogren's syndrome and fibromyalgia, which yielded minimal findings. (<u>Id.</u>) Dr. Shamblin's examinations revealed some symptoms of lupus, including some tenderness, a mild limp, and an altered gait. (<u>Id.</u>) Although

18

Claimant alleged tiredness, weakness, and fatigue to Dr. Rahim, he observed that Claimant ambulated without any assistive device and physical examination essentially was benign. (Tr. at 18.) The ALJ further found that Claimant's symptoms were controlled successfully when she was compliant with treatment and that she experienced no side effects from her medications. (Tr. at 17.) The ALJ noted that Claimant was non-compliant to some extent in taking her prescribed medications and was discharged from Dr. Kostenko's care for failing to comply with narcotic treatment. (Id.) Furthermore, Claimant would run out of medications but wait until months later to seek refills. (Id.) Although she advised that a lack of health insurance prevented her from seeking treatment, she failed to apply for Medicaid or seek treatment from free or subsidized clinics. (Id.) The ALJ further found that the record failed to establish any restrictions imposed by a treating physician.

The ALJ also summarized Claimant's limited activities of daily living but determined that the activities could not "be objectively verified with any reasonable degree of certainty." (Tr. at 18.) The ALJ concluded that if Claimant's activities were as limited as alleged, "it is difficult to attribute that degree of limitations to the [C]laimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision." (Id.)

Contrary to Claimant's allegations, the ALJ clearly considered the factors relevant to her symptoms and pain. The ALJ acknowledged the nature of Claimant's pain in her lower back and legs; the infrequent treatment Claimant received; the routine and conservative treatment, primarily in the form of prescription medications and injections; the absence of side effects from her medications; the frequency of her symptoms; the limitations in the nature of a mild right limp and altered gait; Claimant's failure to take her medications as prescribed; and her activities of daily living. (Tr. at 16-19.) Despite Claimant's alleged disabling symptoms and pain, the clinical evidence failed to corroborate her allegations. Claimant reported on occasion that she was doing well and none of her physicians assessed any functional limitations. When Claimant complied with the recommended

course of treatment, consisting of medication and recommended use of heat, her symptoms and pain were controlled. Although Claimant lacked health insurance, the evidence established that Claimant failed to exhaust all avenues of treatment at little or no cost to her.

Claimant correctly notes that the ALJ was required to consider the factors set forth in the Regulations and SSR 96-7p, and Claimant's subjective statements, which may indicate that she is more limited than the medical evidence alone shows. However, as discussed above, it is a consideration of all the evidence that reveals to an ALJ whether Claimant's pain and other symptoms are disabling. In this instance, Claimant reported that she cared for her pets, watched television, prepared meals, lacked interest in anything, and received assistance from her brother with daily activities. (Tr. at 18.) It is the lack of other corroborating evidence, as discussed, that the ALJ considered as factors in discrediting Claimant's allegations.

Respecting Claimant's statements about her symptoms of fibromyalgia, SSR 12-2p requires that the ALJ follow the two-step process set forth in the Regulations and SSR 96-7p. SSR 12-2p, 2012 WL 3104869, *5 (July 25, 2012). The ALJ found that the evidence established Claimant's diagnosis of fibromyalgia, as confirmed by at least eleven positive tender points on physical examination and some complaints of generalized pain. (Tr. at 13.) The ALJ concluded however, that the record failed to evidence a history of widespread pain, repeated manifestations of signs or symptoms or co-occurring conditions. (Tr. at 13-14.) Although her fibromyalgia may have caused pain, the ALJ found that the evidence did not establish that Claimant's pain and other symptoms were severe enough to prevent any work. (Tr. at 14.)

Accordingly, the undersigned recommends that District Judge Berger find that the ALJ's pain and credibility assessment fully complied with the Social Security regulations and rulings and is supported by substantial evidence.

2. <u>RFC</u>.

Claimant also alleges that the ALJ erred in finding that Claimant had the RFC to perform medium work. (Document No. 11 at 10-12.) "RFC represents the most that an individual can do despite his or her limitations or restrictions." <u>See</u> Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Pursuant to SSR 96-8p, the RFC assessment "must be based on all of the relevant evidence in the case record," including " the effects of treatment" and the "limitations or restrictions imposed by the mechanics of treatment; e.g., frequency of treatment, duration, disruption to routine, side effects of medication." Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545(a), 416.945(a) (2013). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." <u>Id.</u> "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." <u>Ostronski v. Chater</u>, 94 F.3d 413, 418 (8th Cir. 1996).

In her decision, the ALJ found that Claimant had the RFC to perform medium exertional level work. (Tr. at 16.) In reaching this decision, the ALJ summarized the evidence of record, including Claimant's testimony, the medical evidence, and the opinion evidence. (Tr. at 16-19.) Respecting the medical opinions, the ALJ accorded the opinions of Drs. Parikshak and Gomez substantial weight because they were familiar with the rules and regulations respecting social security RFC assessments, their opinions were supported by explanation, and their reports reflected a thorough review of the available records and was supportable. (Tr. at 19.) Claimant

contends that the ALJ's reliance on the opinions of Drs. Parikshak and Gomez was misplaced because these doctors based their opinions on the sole evaluation of Dr. Rahim, who did not find any symptoms and signs of fibromyalgia. (Document No. 11 at 11.)

SSR 12-2p acknowledges that the signs and symptoms of fibromyalgia "may vary in severity over time and may even be absent on some days." SSR 12-2p, 2012 WL 3104869, *5 (July 25, 2012). For these reasons, the Ruling emphasizes the importance for the consultative evaluator to have access to longitudinal information about the claimant. Id. If such longitudinal information was not considered or relied upon by the consultative evaluator, the ALJ nevertheless may rely upon the opinion if it is determined that the evaluator "is the most probative evidence in the case record." Id. In this case, Dr. Rahim's report of examination does not identify any medical records he reviewed. (Tr. at 438-45.) Nevertheless, the ALJ concluded that treatment notes reflected ongoing monitoring for lupus, fibromyalgia, depression, and anxiety and that diagnostic testing established only minimal degenerative changes and suggested only osteopenia. (Tr. at 13, 16.) Treatment notes from Drs. Howard and Shamblin reflected infrequent visits, reports that Claimant was doing well or about the same, and only mild limitations in the form of a right limp and an altered gait. (Tr. at 16-17.) Accordingly, the evidence establishes that although Dr. Rahim did not observe any signs or symptoms of lupus and fibromyalgia at the time of his examination, his conclusions did not vary drastically from the other evidence of only mild or minimal signs and symptoms.

Dr. Parikshak indicated in his opinion that he reviewed medical records from not only Dr. Rahim, but records from Dr. Howard and Dr. Kostenko, the report of Claimant's bone density test, as well as Claimant's reported activities and the absence of any treatment in 2011. (Tr. at 472.) Likewise, Dr. Gomez indicated that he reviewed "all the evidence in file." (Tr. at 474.)

22

Consequently, it is clear that Dr. Rahim's assessment was consistent somewhat with the totality of the evidence of record and that Drs. Parikshak and Gomez considered more than Dr. Rahim's opinion in assessing Claimant's RFC. The opinions of Drs. Parikshak and Gomez are supported by the substantial evidence of record. Accordingly, the undersigned finds that the ALJ's reliance upon the opinions of the reviewing state agency medical consultants was proper under the Rules and Regulations and that her decision respecting the weight assigned to such opinions is supported by substantial evidence.

Claimant also alleges that the ALJ erred in failing to conduct a "function-by-function" assessment in determining Claimant's RFC. (Document No. 11 at 10-12.) In Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015), the Fourth Circuit observed that SSR 96-8p "explains how adjudicators should assess residual functional capacity. The Ruling instructs that the residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." It is only after the function-by-function analysis has been completed that RFC may "be expressed in terms of the exertional levels of work." Id. The Court noted that the ruling must include a narrative as to how the evidence supports each conclusion, citing specific medical facts and non-medical evidence. Id. The Fourth Circuit further noted that a per se rule requiring function-by-function analysis was inappropriate "given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested." Id. Rather, the Fourth Circuit adopted the Second Circuit's approach that "remand may be appropriate...where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in

the ALJ's analysis frustrate meaningful review." Id. (*Citing* Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)); see also, Ashby v. Colvin, Civil Action No. 2:14-674 (S.D. W.Va. Mar. 31, 2015).

Contrary to Claimant's allegations, the ALJ conducted a "function-by-function" assessment of Claimant's limitations. In her decision, the ALJ gave substantial weight to the opinions of Drs. Parikshak and Gomez, who opined that Claimant was capable of performing medium exertional level work that consisted of lifting 50 pounds occasionally and 25 pounds frequently; walking, standing, and sitting for about six hours in an eight-hour workday; and unlimited ability to push and pull. (Tr. at 19, 465-73, 474-75.) Additionally, these consultants opined that Claimant could climb ladders, ropes, or scaffolds and crawl only on an occasional basis, and must avoid certain environmental irritants. (Id.) The ALJ noted Claimant's physical functional limitations to include a mild right limp and an altered gait on at least one examination. (Tr. at 17.) In the absence of opinions contradictory to those of Drs. Parikshak and Gomez and other evidence suggesting more stringent limitations were necessary, the undersigned finds that the ALJ's RFC assessment was conducted properly pursuant to the applicable Rules and Regulations. To the extent that the ALJ did not delineate Claimant's physical capabilities to sit, stand, or walk in her stated RFC, the undersigned finds that the evidence does not warrant a less stringent assessment than that set forth in the opinions adopted by the ALJ, and that remand is not required. See Mascio, 780 F.3d at 636 ("We agree that a per se rule is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are "irrelevant or uncontested.").

Finally, Claimant alleges that the ALJ's RFC of medium exertional level work, in view

of her advanced age and the absence of any past relevant work at the medium level, raises a suspicion that her decision is arbitrary and capricious. (Document No. 11 at 12.) Claimant aptly notes that for persons of advanced age (age 55 or older), "age significantly affects a person's ability to adjust to other work." 20 C.F.R. §§ 404.1563(e), 416.963(e). For instance, if a claimant of advanced age is limited to sedentary or light work, then the claimant is unable to make an adjustment to other work unless it is determined that the claimant has skills that can be transferred to other skilled or semiskilled work. 20 C.F.R. §§ 404.1568(d)(4), 416.968(d)(4). Although Claimant's past relevant work consisted of light work, with no transferrable skills, the ALJ determined that Claimant physically was capable of performing medium exertional level work at the unskilled level of work. Accordingly, the undersigned does not find any merit to Claimant's allegation.

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Plaintiff's Motion for Judgment on the Pleadings (Document No. 11.), **GRANT** the Defendant's Motion for Judgment on the Pleadings (Document No. 12.), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Irene C. Berger, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions

of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Berger, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to send a copy of the same to counsel of record.

Date: January 19, 2016.

Omar J. Aboulhosn
United States Magistrate Judge